Timothy D. RATCLIFFE a/k/a Timothy Romance, Appellant (Defendant Below),

v.

STATE of Indiana, Appellee (Plaintiff Below).

No. 82S00–8802–CR–257.

Supreme Court of Indiana.

May 17, 1990.

Terry A. White, Evansville, for appellant.

Linley E. Pearson, Atty. Gen., Jay Rodia, Deputy Atty. Gen., Indianapolis, for appellee.

SHEPARD, Chief Justice.

Timothy D. Ratcliffe was tried before a jury and convicted of voluntary manslaughter, a class B felony, Ind.Code § 35–42–1–3 (West 1986). The trial court sentenced him to twenty years imprisonment. Ratcliffe appeals, and we affirm.

The evidence supporting the jury's verdict demonstrated that four or five days before February 7, 1987, Ratcliffe gave Richard Farris several hundred dollars to use in a drug deal. Time passed, and Ratcliffe received neither drugs nor money.

Late on the night of February 7, Ratcliffe and his friend Edward Byrd took a cab to the Exotic She Lounge, an Evansville bar, in an attempt to recover the money. While at the She Lounge, Ratcliffe spoke with Farris and the bar's disc jockey, Mark Phillips, another participant in the drug deal.

When the bar closed at 3 a.m., all four men walked to the parking lot. Ratcliffe and Phillips began arguing about when Ratcliffe would get his money. Ratcliffe threatened to kill Phillips if he did not receive the money by 6 p.m. that evening.

A bouncer from the bar came out to tell the men to move on, so Farris offered to drive the other three men home. Ratcliffe and Byrd got into the back seat. Phillips sat in the passenger seat directly in front of Ratcliffe.

Ratcliffe and Phillips continued to argue until Phillips turned and swung at Ratcliffe. The confrontation escalated into a fight, and Ratcliffe stabbed Phillips several times.

Within minutes, the men reached Ratcliffe's home. Ratcliffe and Byrd exited the car while Phillips remained slumped against the car door. Ratcliffe hit Phillips in the face. Ratcliffe and Byrd then walked away. Thereafter, Farris drove Phillips to Deaconess Hospital where he

died a short time later from the stab wounds.

Ratcliffe raises four issues on appeal:

I. Did an outburst by State's witness Vicki Terrell make it impossible for Ratcliffe to receive a fair trial?

II. Did the admission of "mug shots" taken on the night of Ratcliffe's arrest prejudice his right to a fair trial?

III. Did testimony by State's witness Edward Byrd improperly prejudice the jury against Ratcliffe and make it impossible for him to receive a fair trial?

IV. Did the trial court err in failing to give an instruction on battery as a lesser included offense of murder?

### I. *Declaring a Mistrial*

Ratcliffe argues that the trial court erred by failing to declare a mistrial during the direct examination of State's witness Vicki Terrell. The prosecutor asked Terrell if she had seen Ratcliffe carrying a 6 or 7 inch blade, double-edged knife with a white pearl handle. She responded that she had seen him carry that and several other knives. She then declared, "This man has used knives on me in the past." Defense counsel objected on relevancy grounds and moved for a mistrial. After a hearing outside the presence of the jury, the trial court denied the motion and admonished the jury to disregard Terrell's last statement.

To find error here, we would have to conclude that the trial court abused its discretion in denying the motion for mistrial. *Adamov v. State* (1989), Ind., 536 N.E.2d 281. The defendant must show that the witness's statement placed him in a position of grave peril to which he should not have been subjected. Whether a defendant has been subjected to grave peril is determined by the probable persuasive effect of the testimony on the jury's decision. *Id.* Declaring a mistrial is an extreme action, one warranted only when no other action can be expected to remedy the situation. *Id.*

The trial court judge acted within his discretion in denying this motion for mistrial. Terrell's statement about Ratcliffe's prior use of knives was irrelevant to the case being argued before the jury. It was, however, an isolated comment, and its probable persuasive effect on the jury was slight. The trial court's admonition was adequate to cure any possible prejudice.

### II. *Admission of "Mug Shots"*

Ratcliffe argues that admission of two "mug shots" taken the night of his arrest was unduly prejudicial and deprived him of the right to a fair trial.

This Court has traditionally disapproved the use of "mug shots" out of concern that jurors may infer a criminal history from the photographs. *Beadin v. State* (1989), 533 N.E.2d 144. If the circumstances under which the photograph was taken are described to the jury in such a way as to foreclose the inference of prior criminal activity, however, a trial court may admit the photograph. *Id.* The State can also alleviate prejudice from a "mug shot" by disguising the nature of the photograph. *Id.*

The "mug shots" admitted in this case show Ratcliffe with an identification number board in front of him that says: POLICE DEPT., EVANSVILLE, IND., 44534, 2–8–87. Two things about this photo made its admission proper. First, the date on the board was 2–8–87, the date that the stabbing occurred. Second, a police officer testified that the photographs accurately depicted Ratcliffe's appearance on the night of his arrest. From this evidence, the jury most probably inferred that the "mug shots" resulted from the crime being tried and not from some previous crime. The photos were properly admitted.

### III. *Testimony by Edward Byrd*

Ratcliffe argues that two portions of the testimony by State's witness Edward Byrd prejudiced the jury, making it impossible for him to receive a fair trial.

First, during direct examination the trial court allowed Byrd to testify, over the defendant's objection, that he had previously seen Ratcliffe carrying the knife he used to stab Phillips. Whether this testimony was

properly admitted is a question of relevance.

Evidence is relevant when its admission renders the desired inference more probable than it would be without the evidence. *Cambridge v. State* (1981), Ind., 428 N.E.2d 1252, 1256 (quoting *Pirtle v. State* (1975), 263 Ind. 16, 34, 323 N.E.2d 634, 643). Evidence tending to prove a material fact is admissible, even though its tendency in that direction may be exceedingly slight.

The knife in question was not recovered directly from Ratcliffe. The prosecutor had the burden of connecting the knife to Ratcliffe and the crime. Byrd's testimony made the inference that the knife belonged to Ratcliffe more probable. The testimony was relevant and properly admitted.

■ Ratcliffe also asserts error in overruling his objection to part of Byrd's testimony on re-direct examination:

Q. Mr. White asked you something like had you ever seen him go off like that and you said, "No.". You remember that?

A. Yes.

Q. What do you mean by that? I'm not sure I understood your answer.

A. I had never seen T [Ratcliffe] act that way before. I've seen him fight and get made [sic] but I've never seen him act that way before.

Q. In what way did you have reference to?

A. I've never seen him act that crazy. Usually he after he fights somebody he quits.

MR. WHITE: OBJECTION.

PROSECUTOR: They asked the question.

BY THE COURT: OVERRULED.

A. Usually when he fights after he has done beatin' 'em up I never seen him stab anybody or anything.

Q. Usually he just beats them up and leaves them there?

A. Yes.

Q. How many times have you seen that?

A. Twice.

MR. WHITE: Show that my OBJECTION be a continuing objection. It is not relevant.

BY THE COURT: OVERRULED.

Record at 284.

■ The scope of re-direct examination is limited to answering any new matter drawn out during cross-examination. *Kimble v. State* (1983), Ind., 451 N.E.2d 302. Once a defendant inquires into a subject on cross-examination, the State is entitled on re-direct examination to ask further questions about that subject to avoid a false or misleading impression. *Id.*

While cross-examining Byrd about the fight between Ratcliffe and Phillips, defense counsel asked, "You never seen T [Ratcliffe] react like that before did you?" Byrd answered, "No." Defense counsel's question opened the door on the subject of Ratcliffe's prior behavior entitling the prosecutor to inquire further into the area on re-direct. Byrd's testimony on re-direct was admissible.

### IV. *Battery Instruction*

Ratcliffe argues that the trial court erred in failing to give an instruction on battery as a lesser included offense of murder.

The procedure for determining whether to instruct upon a lesser included offense derives from *Lawrence v. State* (1978), 268 Ind. 330, 375 N.E.2d 208. First, the trial court should examine the charging information and the elements of the two offenses to determine whether a conviction of the crime charged requires proof of all the essential elements of the lesser offense plus additional elements which distinguish the two offenses. *Jones v. State* (1988), Ind., 519 N.E.2d 1233. Second, the trial court must examine the evidence produced to prove the distinguishing elements. If the evidence on the distinguishing elements has substantial probative value and is not in serious dispute, the instruction on the lesser offense should be refused to avoid the potential of a compromise verdict. *Id.*

The first step of the test is met if all the statutory elements of the lesser offense are part of the statutory definition of the greater offense, or if the charging instru-

ment reveals that the manner and means used to commit the essential elements of the charged crime include all the elements of the lesser crime. *Id.*

The murder statute states in pertinent part: "Sec. 1. A person who: (1) knowingly or intentionally kills another human being; ... commits murder, a felony." Ind. Code § 35–42–1–1 (West 1986). The battery statute states in pertinent part: "Sec. 1. A person who knowingly or intentionally touches another person in a rude, insolent, or angry manner commits battery, a Class B misdemeanor. However, the offense is: (3) a Class C felony if it results in serious bodily injury to any other person or if it is committed by means of a deadly weapon." Ind.Code § 35–42–2–1 (West 1986).

█ Battery is not inherently a lesser included offense of murder. The information charging Ratcliffe with murder, however, contained all the elements of battery. It alleged in pertinent part that Ratcliffe: "did knowingly kill Robert Mark Phillips, a human being, by stabbing at and against the body of the said Robert Mark Phillips with a certain knife thereby inflicting a mortal wound on the said Mark Phillips causing him to die, all in violation of I.C. 35–42–1–1."

█ The second step of the *Lawrence* test, however, supports the trial court's refusal to instruct on battery. The evidence shows that Phillips died after Ratcliffe stabbed him repeatedly with a knife. It further shows that Phillips was unarmed during the fight and that shortly before the fight, Ratcliffe threatened to kill Phillips if he did not repay the debt that evening. This evidence has substantial probative value and supports a conclusion by the trial court that Ratcliffe acted with the intent to kill and not merely to touch Phillips. The instruction was properly refused.

Ratcliff's conviction is affirmed.

DeBRULER, GIVAN, PIVARNIK and DICKSON, JJ., concur.