KIRSCH, Judge.
 

 Appellant-defendant Bobbie Barnett was convicted by a jury of Attempted Murder,
 
 [1]
 
 a Class A felony. On appeal, he presents the. following issues which we restate as:
 

 1. Whether the State violated his right to a speedy trial contained in Ind.Crim. Rule 4(B)(1).
 

 2. Whether the State violated his right to equal protection of the law when it exercised a peremptory challenge to remove a member of his race from the jury venire.
 

 3. Whether the trial court erred by refusing to instruct the jury on battery as a lesser included offense.
 

 4. Whether there was sufficient evidence to support his conviction.
 

 5. Whether there was an accumulation of errors during the course of the trial which collectively denied him due process of law.
 

 We affirm.
 

 
 *824
 

 FACTS
 

 The facts most favorable to the jury’s verdict establish that during the summer of 1990, Barnett initiated a casual relationship with the victim, Sylvia Knowlton, who worked at a variety store which Barnett frequented. Their relationship progressed until Barnett began living in Sylvia’s home located at 1130 North Pershing in Indianapolis. By March 1991, Barnett and Sylvia’s relationship deteriorated.
 

 On April 26, 1991, Sylvia left the variety store at about 8:00 in the evening. At about 12:30 a.m., Sylvia and two friends went to Sylvia’s home where Barnett was watching television. Sylvia’s two children, Brandie and Bart, were also at the home.
 

 When the three women arrived, Barnett began cursing and complaining about Sylvia’s friends. After her friends left her home some time between 1:00 or 1:30 a.m. on April 27, 1991, Sylvia expressed her anger with Barnett’s treatment of her friends, and asked him to leave. Barnett gathered some personal belongings and left the house. Sylvia locked the door behind Barnett and went to the back bedroom. At approximately 4:00 a.m., Sylvia went to the door to get the newspapers for her newspaper route. She looked out the window of the door and saw Barnett standing outside. Without opening the door, Sylvia refused Barnett’s offer to help deliver the newspapers. She told him to deliver the newspapers himself and returned to the bedroom.
 

 When Sylvia awoke at approximately 7:00 a.m., Barnett was standing in the bedroom. Barnett told Sylvia he had returned to get an item of clothing he had left behind and asked if he could stay with her for a couple of additional weeks. When Sylvia refused, Barnett asked her to walk him to the door. As Sylvia got up and started to come around the end of the bed, Barnett cut the back of her neck with a box cutter. Sylvia pleaded with Barnett to stop and told him that he could stay with her for a couple of weeks if he would stop cutting her. Barnett replied that it was “too late for that now” and continued to attack Sylvia.
 
 Record
 
 at 708. He also told Sylvia that “If I can’t have you, nobody will.”
 
 Record
 
 at 715. When Sylvia’s two children entered the bedroom, Barnett lifted Sylvia’s head as she lay face down on the floor and cut the front of her neck. When Barnett left the bedroom, Sylvia got up and went to look for her daughter who was screaming. Sylvia walked outside where she saw Barnett take off running before she passed out in the grass. Sylvia’s son ran after Barnett.
 

 At approximately 7:30 a.m., Indianapolis Police Officer Mark Rush responded to an emergency dispatch concerning a person stabbed at 1130 North Pershing. Bystanders at the scene provided Officer Rush with Barnett’s name, his general physical description, and his direction of flight. They also told Officer Rush that Sylvia’s son was chasing Barnett with a two by four. Officer Rush left Sylvia’s residence and drove south on Pershing. As he started up an alley, he saw a young man with a two by four; the man shouted, “He went this way.”
 
 Record
 
 at 874. Officer Rush continued up the alley where he saw a man matching Barnett’s physical description. The man turned and saw the police car, continued walking up the alley, and threw an object into a vacant field. Officer Rush ordered him to stop; the man complied. Officer Rush identified Barnett as the man he stopped in the alley. After handcuffing Barnett, Officer Rush returned to the vacant field where he saw the object Barnett threw away. Officer Rush identified the item as a box cutter with blood stains on it.
 

 Sylvia was transported from her home to Wishard Hospital where she was treated by trauma surgeon Dr. Brian Plaisier. When Dr. Plaisier first saw Sylvia, she had two wounds: one across the front of her neck and one across the back of her neck. The two wounds were separated by a gap of about one centimeter so that nearly ninety percent of Sylvia’s neck was encircled by the lacerations. The wound on the front of Sylvia’s neck varied in depth from three to five millimeters. The wound on the back of her neck was 1.5 centimeters (approximately one-half inch) at its deepest point. Dr. Plaisier explained at trial that the digestive tract, respiratory tract, esophagus, major nerves, and great vessels (carotid arteries and jugular veins) all pass through the neck. All but
 
 *825
 
 the nerves lie -within one-half inch of the neck’s surface.
 

 Additional facts necessary to the disposition of the procedural issues Barnett raises are stated below.
 

 DECISION
 

 I. Speedy Trial
 

 Barnett first contends that he was denied his right to a speedy trial. That right is expressed in Ind.Crim.Rule 4(B)(1) which provides in relevant part:
 

 “If any defendant held in jail on an indictment or an affidavit shall move for an early trial, he shall be discharged if not brought to trial within seventy (70) calendar days from the date of such motion, except where a continuance within said period is had on his motion, or the delay is otherwise caused by his act, or where there was not sufficient time to try him during such seventy (70) calendar days because of the congestion of the court calendar.”
 

 On October 8, 1991, Barnett requested an early trial. While other trial dates were scheduled and continued, January 13, 1992 is the trial date critical to resolution of Barnett’s speedy trial claim. Taking into account periods of delay which tolled the running of the applicable time period, the January 13, 1992 trial date was within the 70-day period set forth in Crim.R. 4(B)(1). A trial did not take place on that date, however, because Barnett pled guilty pursuant to a plea agreement with the State. The trial scheduled for January 13, 1992 was replaced with a hearing at which Barnett entered his guilty plea. The trial court took Barnett’s plea under advisement and scheduled the matter for sentencing on February 28, 1992. On that date, the court rejected Barnett’s plea.
 

 The question presented is whether Barnett abandoned his speedy trial motion by electing to plead guilty on the day his early trial was scheduled, even though his plea was ultimately rejected by the trial court. Barnett argues that although the running of the speedy trial clock was suspended during the time his plea was under advisement, the clock resumed ticking upon rejection of the plea. The State contends that Barnett abandoned his speedy trial motion when he elected to plead guilty and that upon rejection of the plea, a new motion was required to invoke Barnett’s speedy trial right and begin the running of a new 70-day clock. We agree with the State.
 

 Resolution of this issue is guided by
 
 Mick-ens v. State
 
 (1982), Ind., 439 N.E.2d 591. In that case, the defendant twice moved for a speedy trial; once on September 25, 1980, and again on November 19, 1980. The November motion was made at the same time Mickens rejected a plea agreement.
 
 Id.
 
 at 595. In finding that Mickens’ speedy trial rights had not been violated, our supreme court held:
 

 “The case law governing motions under Ind.R.Crim.P. 4 requires that the movant maintain a position reasonably consistent with the request that he has made.
 
 Rutledge v. State,
 
 (1981) Ind., 426 N.E.2d 638;
 
 Utterback v. State,
 
 (1974) 261 Ind. 685, 310 N.E.2d 552. The defendant abandoned his September speedy trial motion by pursuing plea negotiations and by making the November motion,
 
 rather than
 
 by seeking discharge on the basis of the September motion.”
 

 Id.
 
 (emphasis added). Use of the phrase “rather than” implies a choice for the defendant, either a speedy trial or a guilty plea. It is logically inconsistent for a defendant to request a speedy trial and then plead guilty because the former is waived by the latter. As our supreme court has noted, “The right to have a trial expeditiously cannot exist or be enforced apart from the right to trial, and any claim of a denial thereof is waived upon a plea of guilty.
 
 Mathis v. State,
 
 (1980) 273 Ind. 609, 406 N.E.2d 1182.”
 
 Gosnell v. State
 
 (1982), Ind., 439 N.E.2d 1153, 1155.
 
 See also Wright v. State
 
 (1986), Ind., 496 N.E.2d 60, 61.
 

 Barnett contends that
 
 Mickens
 
 and
 
 Vaughan v. State
 
 (1984), Ind.App., 470 N.E.2d 374,
 
 trans. denied,
 
 stand only for the proposition that a defendant be charged with any delay arising during the period of plea negotiations. According to Barnett, those cases do not require a new speedy trial re
 
 *826
 
 quest once a plea is aborted. As discussed above, we read
 
 Mickens
 
 differently. Furthermore, this court rejected an invitation to analyze, on a case by case basis, whether plea negotiations constitute a delay tolling the Crim.R. 4 time limitations.
 
 Vaughan,
 
 470 N.E.2d at 377. Following the precedent set in
 
 Vaughan,
 
 we decline to engage in a case by case review of plea negotiations for purposes of determining whether any Crim.R. 4 delay exists. Rather, we adhere to the principles espoused in
 
 Mickens
 
 and hold that a defendant’s guilty plea constitutes an abandonment of any previously asserted Crim.R. 4(B) speedy trial requests, regardless of whether the trial court ultimately accepts the plea.
 

 By pleading guilty, Barnett waived his right to trial, which included his right to a speedy trial.
 
 See Record
 
 at 357, 360. His October speedy trial motion was thus extinguished. When Barnett’s plea was rejected, his right to trial was reinstated and a new speedy trial request was required to invoke the benefit of Crim.R. 4(B).
 
 See Taylor v. State
 
 (1984), Ind., 468 N.E.2d 1378, 1381 (Crim.R. 4(B)(1) requires defendant move for an early trial)
 
 and Dubinion v. State
 
 (1992), Ind.App., 600 N.E.2d 136, 138,
 
 trans. denied
 
 (In situations where a defendant waives his Crim.R. 4(B) right by acting inconsistent with his request for a speedy trial, a new Crim.R. 4(B) motion is required).
 

 Upon rejection of his guilty plea on February 28, 1992, Barnett again moved for an early trial.
 
 Record
 
 at 398, 403. The 70-day period based on Barnett’s new motion expired on May 9, 1992. Barnett was tried on May 6 and 7, 1992; his speedy trial rights were not violated.
 

 II. Peremptory Challenges
 

 Barnett next contends that the State violated his right to equal protection of the law when it used a peremptory challenge to remove a member of his race from the jury venire. The equal protection clause contained in the Fourteenth Amendment to the United States Constitution prohibits the prosecution’s use of peremptory challenges in a racially discriminatory manner.
 
 Batson v. Kentucky
 
 (1986), 476 U.S. 79, 89, 106 S.Ct. 1712, 1719, 90 L.Ed.2d 69, 83. The prosecution may not use its peremptory strikes to challenge potential jurors based solely on their race or based “on the assumption that black jurors as a group will be unable impartially to consider the State’s case against a black defendant.”
 
 Id.
 

 To succeed on an equal protection challenge under
 
 Batson,
 
 the defendant must make a
 
 prima facie
 
 showing of the prosecution’s purposeful discrimination by establishing the following: 1) he is a member of a cognizable racial group; 2) the prosecution has exercised its peremptory challenges to exclude members of the defendant’s racial group from the jury; and, 3) the facts and circumstances present in his case raise an inference that the exclusion was based on race.
 
 Phillips v. State
 
 (1986), Ind., 496 N.E.2d 87, 89. Once a defendant makes the required
 
 prima facie
 
 showing, purposeful discrimination is presumed unless the prosecution presents a neutral explanation for its exercise of peremptory challenges.
 
 Morse v. State
 
 (1992), Ind., 593 N.E.2d 194, 196. The prosecution’s explanation is not required to rise to the level of a challenge for cause.
 
 Id.
 
 A
 
 Batson
 
 equal protection challenge is purely factual, and its resolution turns largely on an assessment of credibility.
 
 Nicks v. State
 
 (1992), Ind., 598 N.E.2d 520, 523 (citing
 
 Hernandez v. New York
 
 (1991), 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395). We give great deference to the trial court’s determination of whether purposeful racial discrimination has occurred.
 
 Taylor v. State
 
 (1993), Ind.App., 615 N.E.2d 907, 911.
 

 At trial, Barnett objected to the State’s use of a peremptory challenge to excuse juror Faye Taylor from the jury venire. In resolving this issue, we will assume that Barnett established a
 
 prima facie
 
 case of racial discrimination and proceed to the question of whether the State advanced an adequate race-neutral explanation for its exercise of the peremptory challenge.
 

 In response to Barnett’s charge that it exercised its peremptory challenge against juror Taylor in a discriminatory manner, the State offered the following explanation:
 

 
 *827
 
 “[I]t became evidence [sic] early on that she was not comfortable sitting in judgement, not comfortable in making a decision. No matter how long Your Honor spoke with her, how long I spoke with her, I could not remain comfortable in my mind that she could go back to the jury room and deliberate and come to any decision.”
 

 Record
 
 at 588. The State further explained that it excused juror Taylor because “She asked for every single piece of the jigsaw puzzle, every single piece. And Judge, in no case have I had every single piece. She said that she wouldn’t feel comfortable making a decision without it.”
 
 Record
 
 at 594-95. The trial court found no purposeful discrimination because:
 

 “[Ms. Taylor] did appear somewhat hostile to me. I got the impression from her that she was very reluctant to sit as a juror. I don’t know why, but — she mentioned something about as she got older, I think she became more critical, at least that is the interpretation that I got. I do recall that she said that she could make a decision if she was asked to, but I certainly didn’t feel comfortable with asking her to make a decision because of her reluctance to want to do so.... I find that excusing Ms. Taylor, based upon her answers and demeanor, as I observed it — whatever you can read out of demeanor, I don’t know. Based upon what I observed I would find that excusing Ms. Taylor would be a race-neutral decision.”
 

 Record
 
 at 595-96.
 

 A juror’s acknowledgement that she would find it difficult to sit in judgment of another person is a valid race-neutral reason for exercising a peremptory challenge.
 
 Taylor,
 
 615 N.E.2d at 912. Barnett recognizes the race-neutrality of such a reason, but asserts that it is inadequate in the present case. More specifically, Barnett contends that the prosecution’s explanation is discredited by its failure to challenge another juror who voiced similar reservations about making a decision. The juror Barnett identified, however, did not voice any difficulty in sitting in judgment. Affording the trial court’s decision the required degree of deference, we find Barnett’s objection to the State’s use of its peremptory challenges was properly denied.
 

 III. Jury Instructions
 

 Barnett next contends the trial court erroneously refused to give his tendered instruction regarding the lesser included offense of battery with a deadly weapon. Instructing the jury on a lesser included offense requires, first, an examination of the statute and the charging information to determine whether the lesser offense is necessarily included in the greater.
 
 Altmeyer v. State
 
 (1988), Ind., 519 N.E.2d 138, 141. This part of the test is satisfied: “[I]f all the statutory elements of the lesser offense are part of the statutory definition of the greater offense, or if the charging instrument reveals that the manner and means used to commit the essential elements of the charged crime include all the elements of the lesser crime.
 
 [Jones v. State
 
 (1988), Ind., 519 N.E.2d 1233, 1234].”
 
 Ratcliffe v. State
 
 (1990), Ind., 553 N.E.2d 1208, 1211-12. Second, the trial court must examine the evidence produced to prove the elements distinguishing the lesser offense from the greater.
 
 Id.
 
 at 1211. “If the evidence on the distinguishing elements has substantial probative value and is not in serious dispute, the instruction on the lesser offense would be refused to avoid the potential of a compromise verdict.”
 
 Id.
 
 (citation omitted).
 

 The State concedes that the first part of the inquiry was met in this case because the charging information here, as in
 
 Ratcliffe,
 
 contained all of the elements of battery.
 
 [2]
 
 
 *828
 
 Also as in
 
 Ratcliffe,
 
 the element of an intent to kill distinguishes the lesser offense of battery from the greater offense of attempted murder. Thus, proof that Barnett intended to kill Sylvia rather than to merely touch her would support the trial court’s refusal to instruct the jury on battery.
 
 See Ratcliffe,
 
 553 N.E.2d at 1212.
 

 The evidence shows that when Sylvia acquiesced in Barnett’s request to stay a while longer at her home, Barnett continued to cut her, saying, “It’s too late for that now.” Also while he attacked Sylvia, Barnett declared, “If I can’t have you, nobody will.” The medical evidence established that the wound to Sylvia’s neck was deep enough to be life threatening, and that the wound covered approximately ninety percent of the circumference of Sylvia’s neck. It may be inferred from his use of a deadly weapon in a maimer that was likely to cause death or great bodily harm that Barnett intended to kill Sylvia.
 
 See Davis v. State,
 
 635 N.E.2d 1117, 1120 (Ind.App.1994). This evidence on the distinguishing element of intent to kill had substantial probative value and was not in serious dispute. Thus, the trial court properly refused Barnett’s tendered instruction.
 

 TV. Sufficiency of the Evidence
 

 Barnett recognizes that when this court reviews the sufficiency of the evidence, we consider only the evidence and the reasonable inferences arising therefrom which support the jury’s verdict.
 
 White v. State
 
 (1994), Ind-App., 630 N.E.2d 215, 218,
 
 trans. denied.
 
 Without weighing the evidence or determining witness credibility, we will affirm the conviction if the evidence and inferences establish that a trier of fact could reasonably conclude that the defendant was guilty beyond a reasonable doubt.
 
 Dausch v. State
 
 (1993), Ind., 616 N.E.2d 13, 14.
 

 In support of his claim, Barnett identifies certain testimony elicited from Sylvia’s daughter, Brandie. Brandie testified about the argument between Barnett and Sylvia concerning Sylvia’s friends. Brandie explained that Sylvia asked Barnett to leave, and when he initially refused, Sylvia got a knife and chased Barnett out of the house. Barnett, however, fails to discuss the remainder of Brandie’s testimony describing the instant offense. Brandie testified that later that morning, she went back to Sylvia’s bedroom where she saw Barnett standing over her mother. Brandie saw Barnett cut Sylvia “in the front.”
 
 Record
 
 at 994. She saw him cut Sylvia on her neck with a box cutter.
 

 Brandie’s testimony is consistent with other evidence adduced at trial that Barnett savagely attacked Sylvia with a box cutter, intending to kill her. Adhering to our standard of review that we consider only the evidence most favorable to the verdict, we find the evidence sufficient to support Barnett’s conviction.
 

 V. Due Process
 

 Finally, Barnett contends that the accumulation of errors raised in Issues I, II and III above, combined to deny him due process of law. Having found no error on any of the grounds Barnett alleges, there can be no denial of due process.
 
 Madison v. State
 
 (1989), Ind., 534 N.E.2d 702, 707.
 

 Affirmed.
 

 FRIEDLANDER and RUCKER, JJ., concur.
 

 [1]
 

 . IC 35-41-5-1 (1988 Ed.); IC 35-42-1-1 (1992 Supp.).
 

 [2]
 

 . The charging information in
 
 Ratcliffe
 
 alleged that Ratcliffe: " ‘did knowingly kill Robert Mark Phillips, a human being, by stabbing at and against the body of the said Robert Mark Phillips with a certain knife thereby inflicting a mortal wound on the said Mark Phillips causing him to die, all in violation of I.C. 35-42-1-1.' " 553 N.E.2d at 1212. The amended charging information here alleged that Barnett: "did knowingly and unlawfully with the intent to commit the crime of Murder, attempt to kill SYLVIA KNOWLTON, a human being by engaging in conduct, that is: CUTTING SYLVIA KNOWL-TON'S NECK by means of a deadly weapon, that is: A BOX CUTTER, which constituted a sub
 
 *828
 
 stantial step toward the commission of said crime of Murder_"
 
 Record
 
 at 75.