Charles B. SPLUNGE, Appellant,

v.

STATE of Indiana, Appellee.

No. 82S00–9311–CR–1222.

Supreme Court of Indiana.

Oct. 25, 1994.

David M. Shaw, Mitchell, Staser & Shaw, Evansville, for appellant.

Pamela Carter, Atty. Gen., Cynthia L. Ploughe, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

In August of 1986, appellant was convicted of Murder and Robbery. He received a sentence of sixty (60) years. The conviction was appealed to this Court and affirmed. *Splunge v. State* (1988), Ind., 526 N.E.2d 977, *cert. denied,* (1989), 490 U.S. 1110, 109 S.Ct. 3165, 104 L.Ed.2d 1028.

In February of 1991, the United States District Court for the Northern District of Indiana granted appellant's writ of *habeas corpus.* That decision was affirmed by the United States Court of Appeals. *Splunge v. Clark* (7th Cir.1992), 960 F.2d 705. A second trial was held in January of 1993; however, the jury could not reach a verdict. A third trial was commenced in March of 1993 and resulted in the conviction of appellant. He again was sentenced to a term of sixty (60) years. This is an appeal from that conviction.

The facts are: In April of 1986, appellant and Tara K. Fox entered into an agreement whereby they would search for a person to rob and would steal that person's automobile. Appellant was in possession of a handgun. After searching for a potential victim, appellant finally decided upon Kenneth Wallace, who at that time was inside the Apollo Liquor Store on Riverside Avenue in Evansville, Indiana.

Appellant gave his gun to Fox and told her that when Wallace exited the liquor store they would approach him, ask for a ride, and she was to get in the front seat with Wallace

and he would get in the backseat. In order to get Wallace moving away from the liquor store, they gave him an address where they wished to go. When Wallace arrived at the designated area and was starting to stop to let appellant and Fox out, Fox pulled the handgun in order to effect the robbery. However, she stated that the gun accidentally discharged and in her excitement she fired a second shot.

Wallace was wounded in the hip and the abdomen. After the shots were fired, appellant pushed Wallace from the vehicle, left him lying on the pavement in an intersection and drove away. Several persons at the intersection witnessed this activity. One of those witnesses, Louis Moschener, was in a vehicle directly behind Wallace's vehicle and when appellant and Fox sped off he followed them. After a short chase, appellant attempted to negotiate a turn at too high a speed and crashed into a house. Both he and Fox fled the scene. Fox was captured a short time later and appellant was captured the next day.

Prior to appellant's trial, Fox entered a plea of guilty and received a sixty (60) year sentence. At appellant's latest trial, she testified to the quoted-above facts. She stated that she had received no consideration by the State in return for her testimony.

Appellant claims reversible error resulted from the prosecutor's misconduct during the closing argument. He first claims the prosecutor improperly commented upon appellant's fifth amendment right to remain silent and thereby directed the jury's attention to the fact that appellant did not testify. The actual comment of the prosecutor was: "Think about the victim. The victim in this case has the right to remain silent, too. And he will for all eternity, thanks to Mr. Splunge. He had rights, too."

In *Bernard v. State* (1989), Ind., 540 N.E.2d 23, in a situation very similar to the case at bar, this Court observed that the comments of the prosecutor were "condemnable." However, in that case we found the prosecutor's misconduct did not rise to reversible error. The same situation prevails here. There can be little doubt that the prosecutor in this case was attempting to remind the jury that appellant had not testified. However, he did not make direct reference to such and did not dwell on the matter. In view of the overwhelming evidence of appellant's guilt, we cannot say that the improper conduct of the prosecutor rises to reversible error.

Appellant also contends the prosecutor made an improper appeal to the jury's sympathy. Appellant refers to the comments of the prosecutor to the effect that everybody in the courtroom could go home that evening except possibly the defendant, whereas the victim in this case had not been able to go home for the past six years and that he was not going home.

Appellant cites *Woolston v. State* (1983), Ind., 453 N.E.2d 965 wherein the prosecutor commented on the condition of the victim who was confined to a wheelchair as a result of a shooting. This Court observed that the prosecutor's comments were improper. The case at bar differs from the situation prevailing in *Woolston*. In the case at bar, defense counsel had observed in his argument to the jury that the persons in the courtroom would go home with the exception of the defendant, that the rest of them could forget about the trial whereas the defendant would have to live with imprisonment for a long period of time if he was convicted. He also referred to the fact that appellant's mother and his family would have to live with the jury's decision for the rest of their life.

The prosecutor's comments were made in his rebuttal argument following the comments of the defense counsel. He merely observed that defense counsel was correct, that they would all go home except the defendant and the victim. We view this as proper commentary upon the final argument of appellant's counsel. *See Goodman v. State* (1992), Ind., 588 N.E.2d 507.

Appellant claims it was improper for the prosecutor to observe "that the defense counsel does not want the jury to know the truth." Appellant cites *Loveless v. State* (1960), 240 Ind. 534, 166 N.E.2d 864, wherein this Court condemned one attorney waging a personal attack upon opposing counsel. It is

highly improper for counsel to attempt to impinge the integrity of opposing counsel. The prosecutor's conduct in this regard is deplorable and in no sense of the word is to be condoned by this Court. In *Scherer v. State* (1990), Ind., 563 N.E.2d 584, this Court passed upon similar conduct by a prosecutor. There as here, we observe the conduct of the prosecutor to be improper. However, as in the case at bar, the evidence of guilt was so overwhelming that we did not feel justified in reversing the case.

In the case at bar, as in *Scherer,* in view of the evidence presented against appellant, we would not be justified in reversing the case because of the improper conduct of the prosecutor.

■ Appellant contends the prosecutor committed reversible error during closing argument when he improperly construed defense counsel's argument as admitting that his client was a thief. Argument by both defense counsel and the prosecutor at this phase became rather ragged. Defense counsel attempted to set up a reconstruction of the events with the bottom line being that Tara Fox turned the gun on the defendant and forced him to drive away from the scene of the shooting.

In his rebuttal, the prosecutor continued the argument in attempting to translate for the jury that appellant's counsel had admitted appellant was a car thief. One can only sympathize with the trial judge when the final argument by counsel assumes the proportions observed here. Not only is it exasperating for the trial judge but one has to believe it also is exasperating for the jury. Here again, the prosecutor was responding to the argument of the defense counsel. *Goodman, supra.* We cannot say that this constitutes reversible error.

■ Appellant contends that in his closing argument the prosecutor mischaracterized and distorted the evidence. In his argument, the prosecutor referred to a lock-blade knife which was found in the car following the crime. Here again, the trial judge had to referee an unnecessary squabble between counsel. They argued with each other as to where the knife was found in the car and

what, if any, inference should be drawn therefrom. Here again, this had little or nothing to do with the evidence of how the crime was perpetrated. We see no reversible error here.

■ Appellant claims the prosecutor improperly argued that the defense had failed to prove a matter when the State had been successful in its objection to the introduction of that evidence. During the trial, Jenny Upchurch and Willie Alexander testified that appellant had stated that he and Fox were trying to "hustle" Kenneth Wallace. Defense counsel then tried to pursue what the term "hustle" meant. He indicated that it did not mean they were attempting to rob Wallace but that "hustle" meant they were "pulling a trick, prostitution, or begging." The trial court sustained the State's objection on going into the street definition of the word "hustle." When the State made its objection, the evidence already was before the jury that the word "hustle" meant something other than robbery. The State's objection and the court's ruling on that objection prevented the belaboring of the extended definition of the word "hustle." The trial court was well within its discretion in terminating this extended argument on a point already made. *Rowe v. State* (1989), Ind., 539 N.E.2d 474.

■ Appellant claims the trial court erred in overruling his motion for a mistrial following final argument. He based his motion upon the various acts of misconduct of the prosecuting attorney during the final argument. As above stated, we accept appellant's statement that much of the prosecutor's final argument was improper. Appellant also is correct in his position that improper comment during final argument must be considered in the cumulative impact which it might have had upon the jury. *Evans v. State* (1986), Ind., 497 N.E.2d 919.

■ In *Maldonado v. State* (1976), 265 Ind. 492, 355 N.E.2d 843, this Court dealt with a situation very similar to the case at bar and observed that we had the duty to examine the misconduct "under all the circumstances" and determine whether it had placed the defendant in grave peril in view of

all of the circumstances of the case. In that case, as here, we observe that the record in its entirety, although reflecting improper conduct, did not rise to the status of placing the defendant in "grave peril." The error in the case at bar does not constitute reversible error.

Appellant contends reversible error occurred when the prosecutor referred to appellant's exercise of his right to remain silent. During presentation of the State's case, police officer Michael Cook testified that when they first read appellant his *Miranda* rights, he refused to sign a waiver and indicated he wished to exercise his Fifth Amendment right to remain silent. The officer went on to testify that eventually appellant reinitiated contact with the police and provided them with a statement. Appellant cites *Doyle v. Ohio* (1976), 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 for the proposition that post-*Miranda* silence cannot be used for impeachment of a defendant. However, this Court has observed that a violation of this rule does not necessarily require reversal. *See Yurnia v. State* (1985), Ind., 474 N.E.2d 93.

In the case at bar, one hardly can perceive any harm from the reference to appellant first exercising his *Miranda* right to remain silent. The officer was not making reference to this incident in order to impeach appellant in any way but was merely reciting the chronology of events which led to appellant eventually making his statement to the police. Under the circumstances, the reference did not constitute reversible error.

Appellant contends it was reversible error to introduce photographs of appellant in evidence when his identity was not at issue. Appellant argues the photographs introduced in evidence were easily recognized as mug shots and therefore suggested that appellant had a criminal record. Although the photographs did not contain any information on them which would indicate mug shots, there is merit to appellant's argument that the poses of full face and profile photographs would indicate to a knowledgeable person that they probably were mug shots.

The photographs were placed in evidence during the testimony of Deloyd Greer who had observed appellant at the scene of the crime. Greer had been shown an array of photographs to determine whether he could identify the person he had seen at the scene of the crime. State's Exhibit No. 14 is that array of photographs. In *Hunter v. State* (1986), Ind., 492 N.E.2d 1067, this Court commented on the danger of using mug shots as evidence presented to a jury.

In the past, "mug shot" photographs of a defendant from which all evidence indicative of past crimes has been deleted have been admissible, *Coleman v. State* (1989), Ind., 546 N.E.2d 827, particularly when it is clear from the evidence that the photograph was taken incident to the arrest for the crime at issue in the trial. *Id.; see also Ratcliffe v. State* (1990), Ind., 553 N.E.2d 1208, and *Dunsizer v. State* (1988), Ind., 523 N.E.2d 409. However, where a photograph has been likely to imply to the jury that the defendant has a prior record, it has been held to be inadmissible. *Accord Richey v. State* (1981), Ind., 426 N.E.2d 389. We still believe that a mug shot is not per se inadmissible, *Andrews v. State* (1989), Ind., 536 N.E.2d 507, but we caution our trial courts that since the typical mug shots with a front and side profile are likely to imply a prior arrest record, they must be mindful of Indiana Evidence Rule 403 and should exclude these from evidence unless there is particular probative value which substantially outweighs the danger of prejudice. *See* Ind.Rules of Evid. 403. *See also Andrews, supra* at 509 ("'Mug shots' . . . will be allowed if 1) they are not unduly prejudicial, and 2) they have substantial independent probative value." *Id.*).

In this case, appellant conceded he was present at the scene of the crime, and thus identity was not really an issue at trial. That being so, the photographs had little probative value and should not have been admitted. On the other hand, the photographs were carefully redacted to prevent disclosure of any details of appellant's past, and in light of the very substantial evidence of guilt we cannot say that the admission of the array requires a new trial.

Appellant claims there was reversible error when he was prevented from pursuing inconsistent statements made by Tara Fox in her statements to police and in her testimony at trial. Fox was interrogated at length in great detail concerning these inconsistencies. An examination of the record reveals that these so-called inconsistencies were *de minimus* to say the least. They involved such things as what destination Fox and appellant gave to the victim when they first approached him to give them a ride and the detail as to when she announced a holdup when she presented the gun and the victim's reaction. After this long harangue of debating with the witness, appellant's counsel then called Officer Michael Cook to the stand to question him as to the detail of the answers given to the police by Fox. The trial court correctly sustained the State's objection to Cook's testimony as being hearsay.

█ It is true that when a witness has testified contrary to prior statements, a witness may be called to prove those prior inconsistent statements. *Modesitt v. State* (1991), Ind., 578 N.E.2d 649. However, in the case at bar, defense counsel was in possession of the prior statements and used them for extensive cross-examination of Fox. We are at a loss to understand how Officer Cook could add to that situation. We see no reversible error here.

█ Appellant contends the trial court erred in refusing to allow cross-examination of Fox concerning the possible modification of her sentence. As previously stated in this opinion, this case has a long history of litigation. Fox received a sixty (60) year sentence in 1986. Defense counsel attempted to question Fox concerning when she would be released. She observed that she would not be released until she was 51 years of age. This calculates to the year 2016. Defense counsel then observed that the only way she could get out sooner would be if the judge modified her sentence. Fox responded, "Yes, if he modifies it, or parole." Counsel then proceeded to question her as to how this could come about to which she answered she did not know.

Appellant cites the cases of *Pfefferkorn v. State* (1980), Ind.App., 413 N.E.2d 1088 and

*Haeger v. State* (1979), 181 Ind.App. 5, 390 N.E.2d 239, for the proposition that a defendant is entitled to show the bias and prejudice of a prosecution witness including any favorable treatment they may receive in exchange for their testimony. Fox testified specifically that she had received no promises from the State in exchange for her testimony. It is obvious that the State was in no position at this late date to extend a promise of a lesser sentence. The remote possibility that Fox would receive a modification or clemency at this time is highly speculative and in no way reflects any arrangement made by the State to procure Fox's testimony.

In 1986 she had given the police a detailed statement implicating appellant in the crime. It was after giving this statement that she received the maximum sixty (60) year sentence for her participation in the killing of the victim. She certainly did not receive any special consideration because of her statement. It is highly improbable that she would receive any special consideration for taking the witness stand and reiterating what she already had said in 1986. We see no reversible error here.

The trial court is affirmed.

SHEPARD, C.J., and DICKSON, J., concur.

SULLIVAN, J., dissents with separate opinion in which DeBRULER, J., concurs.

SULLIVAN, Justice, dissenting.

I respectfully dissent because I do not believe it is proper to resolve this case based on how "overwhelming" the evidence is. Rather, because I believe federal constitutional errors occurred at trial, the test we must apply is that enunciated in *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), *reh'g denied*, 386 U.S. 987, 87 S.Ct. 1283, 18 L.Ed.2d 241 (1967). " 'The question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction.' ... [B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless be-

yond a reasonable doubt." 386 U.S. at 23–24, 87 S.Ct. at 827–28 (quoting from *Fahy v. Connecticut,* 375 U.S. 85, 86–87, 84 S.Ct. 229, 230–31, 11 L.Ed.2d 171 (1963)). This court explicitly adopted the *Chapman* standard in *Rabadi v. State* (1989), Ind., 541 N.E.2d 271, 276.

That there was federal constitutional error here is plain.

First, as the majority rightly condemns, the deputy prosecutor emphasized in a highly prejudicial way to the jury during closing argument that the appellant had exercised his constitutional right to remain silent. Such prosecutorial behavior was held to be unconstitutional by the United States Supreme Court in *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), *reh'g denied,* 381 U.S. 957, 85 S.Ct. 1797, 14 L.Ed.2d 730 (1965), and by our court in *Brooks v. State* (1992), Ind., 598 N.E.2d 519, 520. *See also Chapman,* 386 U.S. at 25–26, 87 S.Ct. at 828–29.

Second, the prosecutor elicited testimony at trial about the appellant's pre-trial exercise of his fifth amendment rights. In response to questioning at trial by the deputy prosecutor, a police officer involved in the investigation testified over objection that the appellant refused to sign a waiver of his *Miranda* rights and that he advised the police officer that he did not want to give a statement. It is unconstitutional to tell an arrestee that he has the right to remain silent and then use that silence against him at trial. *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976); *Jones v. State* (1976), 265 Ind. 447, 451, 355 N.E.2d 402, 404. *See also Lynch v. State* (1994), Ind., 632 N.E.2d 341, 342; *Wilson v. State* (1987), Ind., 514 N.E.2d 282, 283.

By allowing the prosecution to emphasize appellant's exercise of his right to remain silent both before and during the trial, the trial court committed constitutional errors. It certainly seems to me that there is a reasonable possibility that these errors might have contributed to the conviction, particularly since the defendant was being retried on these charges following a hung jury in a previous trial. These errors were not harmless beyond a reasonable doubt.

For these reasons, I dissent.

DeBRULER, J., concurs.