Fereydoon "Fred" BOUSHEHRY,
Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–9408–CR–506.

Court of Appeals of Indiana,
Second District.

March 16, 1995.

Rehearing Denied April 26, 1995.

William F. Thoms, Jr., Indianapolis, for appellant.

Pamela Carter, Atty. Gen., Joseph F. Pieters, Deputy Atty. Gen., Indianapolis, for appellee.

## OPINION

KIRSCH, Judge.

Fereydoon "Fred" Boushehry was charged with eleven criminal offenses arising out of the killing of two Canada geese.[1] He was

1. We agree with Judge Hoffman's view contained in the footnote of his separate opinion that this

ultimately convicted of seven of those charges: Criminal Recklessness, a Class B misdemeanor, two counts of Cruelty to an Animal, Class A misdemeanors, two counts of Illegal Taking of Migratory Waterfowl, Class C misdemeanors, and two counts of Illegal Possession of Migratory Waterfowl, Class C misdemeanors. He was acquitted of the remaining four offenses.

We restate the issues Boushehry raises on appeal as:

I. Whether there was sufficient evidence to support his convictions for criminal recklessness and cruelty to an animal.

II. Whether he was properly convicted of violating IC 14–2–4–1(1) and (2).

III. Whether his convictions and sentences violate double jeopardy principles.

We affirm in part and reverse in part.

### FACTS

The facts most favorable to the judgment of conviction establish that on September 26, 1991, Jim Waugh was working in a subdivision Boushehry was developing. Boushehry approached Waugh and asked him if he wanted to shoot some geese. Waugh agreed, and the two men went to a nearby vacant lot next to Boushehry's home. Then, Waugh took a .22–caliber rifle out of the trunk of his car, and fired two or three shots, killing one goose and wounding another. When Waugh fired his rifle, he was approximately twenty-five yards away from the geese. The shots were fired in the direction of Shelbyville Road in Marion County, Indiana, which bordered the vacant lot. Waugh put the rifle back into the trunk of his car and resumed his work. Boushehry later told Waugh that he cut the heads off the geese and put the geese in the sink in Boushehry's garage.

On the same day, Chestena Rodgers was watching television in her home in the same subdivision when she heard gunshots outside. She looked out the window and saw Waugh put a rifle in a gun case which he then put in the trunk of a car. Ms. Rodgers looked toward the vacant lot and saw Boushehry chasing a goose that had a broken wing.

case represents an egregious example of over-

Boushehry caught the goose, grabbed it by the neck, and started walking toward his house. Ms. Rodgers son, Craig, saw Boushehry carry the goose into Boushehry's garage and return carrying the goose and a shiny object. Craig saw Boushehry make a "slitting" motion across the goose and then throw the goose to the ground. The goose flopped around on the ground before becoming still. Boushehry then picked up that goose and another goose that was already dead, and carried them both into his garage.

Also on September 26, 1991, Conservation Officer Paul Bykowski responded to a report that someone was illegally taking Canada geese in Boushehry's subdivision. Officer Bykowski went to the Boushehry residence where Mrs. Boushehry consented to let him look in the garage. As Mrs. Boushehry led Officer Bykowski to the open garage door, he noticed a trail of blood and feathers leading from the vacant lot into the garage, ending at a utility sink toward the back of the garage. Officer Bykowski saw two freshly killed Canada geese in the utility sink.

The time set by the Federal Fish and Wildlife Service for taking Canada geese in 1991 was October 26 to November 3, and again from November 21 to January 20. The court took judicial notice that September 26 does not fall within either of these two time periods.

### DISCUSSION AND DECISION

#### Issue One: Sufficiency of the Evidence

 Boushehry challenges the sufficiency of the evidence to support his convictions of criminal recklessness and cruelty to an animal. When reviewing the sufficiency of the evidence, this court considers only the evidence and the reasonable inferences arising therefrom which support the verdict. *Barnett v. State* (1994), Ind.App., 637 N.E.2d 826, 832. Without weighing the evidence or determining witness credibility, we will affirm a conviction if the evidence and inferences establish that a trier of fact could reasonably conclude that the defendant was guilty beyond a reasonable doubt. *Id.*

charging.

## A. Criminal Recklessness

■ Boushehry first contends there was insufficient evidence to support his criminal recklessness conviction. A person commits criminal recklessness when he "recklessly, knowingly, or intentionally performs ... an act that creates a substantial risk of bodily injury to another person[.]" IC 35–42–2–2 (1988 Ed.). The State contends that Boushehry's guilt arises under an accomplice theory of liability incurred when he induced Waugh to fire the gun in the direction of Shelbyville Road.

Boushehry argues the State failed to establish the existence of a substantial risk of bodily injury to another person, citing *Elliott v. State* (1990), Ind.App., 560 N.E.2d 1266. In *Elliott*, the defendant fired five pistol shots from his place of business while some of his employees were present. He fired the shots over uninhabited fields and woodlands which bordered his business. None of Elliott's employees were in his line of fire, no one was in the adjacent fields, and no evidence was presented that anyone was present in the woodlands, although hunters were known to hunt in both the fields and the woodlands. This court reversed Elliott's criminal recklessness conviction, finding that although "Elliott's conduct was reckless at best and deplorable at worst, it did not create a substantial risk of bodily injury to another person because there were no people in or near his line of fire." *Id.* at 1267.

In deciding *Elliott*, this court determined that the word "substantial," as used in the criminal recklessness statute, means something that has "substance or actual existence." *Id.* (quoting *Webster's Third New International Dictionary* 2280 (1966)). Based upon this definition, this court rejected as "mere conjecture" the State's contention that a hunter "could have been in the woodlands, out of Elliott's sight." *Id.* "A substantial risk of bodily injury may not be proven by mere speculation for which there has been no evidence presented at trial." *Warren v. State* (1993), Ind.App., 615 N.E.2d 500, 502 (citing *Elliott* ).

The State attempts to distinguish *Elliott*, claiming that a "reasonable likelihood" existed that a motorist could have been traveling down Shelbyville Road when Waugh fired the gun. We do not see the distinction. As with the non-existent hunters in *Elliott*, the possibility of a motorist passing by on Shelbyville Road at the time Waugh fired the gun across the vacant lot presents only a remote risk of bodily injury. *See Elliott*, 560 N.E.2d at 1267. The record contains no evidence that anyone was in or near Waugh's line of fire.

■ A conviction will be reversed as a matter of law if the State fails to prove an essential element of the crime. *Barnett v. State* (1991), Ind.App., 579 N.E.2d 84, 86, *trans. denied.* Because the State failed to prove the actual existence of a substantial risk of bodily injury to another person, Boushehry's conviction for criminal recklessness must be reversed. *See Davis v. State* (1977), 267 Ind. 152, 158, 368 N.E.2d 1149, 1152 (conviction of a person as an accessory cannot stand absent proof that some person actually committed the offense charged).

## B. Cruelty To An Animal

Boushehry next contends there was insufficient evidence to support his cruelty to an animal convictions. Cruelty to an animal is proscribed by IC 35–46–3–12 (1988 Ed.) which provides:

"(a) A person who knowingly or intentionally:

(1) tortures, beats or mutilates a vertebrate animal resulting in serious injury or death to the animal; or

(2) kills a vertebrate animal without the authority of the owner of the animal;

commits cruelty to an animal, a Class A misdemeanor."

Boushehry was charged with two counts of "knowingly tortur[ing] or mutilat[ing] a vertebrate animal, to-wit: 1 Canada Goose, resulting in death to the animal." *Record* at 3–4.

Boushehry claims there was insufficient evidence to establish that either he or Waugh tortured or mutilated the geese. The State counters that the shooting of the geese constituted mutilation. Because IC 35–46–3–12 does not define "mutilate," we must take the term in its plain, or ordinary and usual,

sense. IC 1–1–4–1 (1993 Ed.); *Elliott,* 560 N.E.2d at 1267.

■ The evidence supports Boushehry's guilt of only one count of cruelty to an animal. Waugh shot two geese. One goose died instantly; there was no evidence presented at trial that either Boushehry or Waugh tortured or mutilated this goose in achieving its death. The act of shooting the goose is not enough alone to establish cruelty to an animal by either torture or mutilation. Because Boushehry was charged with only the torturing or mutilation death of the geese, his conviction for cruelty to an animal based on the death of the goose who died from the gunshot, absent evidence that the goose was tortured or mutilated, cannot stand.

■ With respect to the wounded goose, the record supports Boushehry's conviction for cruelty to an animal. This goose continued to live after it was shot. The record reflects that the gunshot resulted in injury to the goose's wing. Boushehry then slit the throat of the injured goose. This act constituted mutilation in its plain, or ordinary and usual, sense.

Boushehry testified at trial that he killed the injured goose to put it out of its misery, a defense recognized under the statute. IC 35–46–3–12(b)(3). It was for the trier of fact to determine the weight and credibility to be afforded Boushehry's claim that he killed the goose to prevent it from suffering. We will not disturb that determination.

The dissent concludes that this conviction should also be reversed because the uncontroverted testimony of Chestena Rogers, Craig Rogers and Boushehry establish that the goose was suffering when Boushehry killed it. The evidence is also uncontroverted that Boushehry was responsible for causing the injuries that induced the goose's suffering. When the defendant's unlawful act causes the animal's suffering, he should not escape penal consequences by claiming that killing the animal was necessary to prevent continued suffering.

## Issue Two: Violation of IC 14–2–4–1(1) and (2)

Boushehry was charged with eight counts of violating IC 14–2–4–1(1) and (2) (1988 Ed.). These statutory sections provide that:

"(1) It shall be unlawful for any person to take or possess, sell, offer for sale, purchase, offer to purchase, or to ship, transport, or carry, or to deliver or receive for shipment, transportation, or carriage in any manner beyond the limits of the state of Indiana, any migratory bird designated in this article, or any part, nest, or egg thereof, except only as otherwise permitted by the provisions of this article.

(2) It shall be unlawful for any person to take or possess for any purpose whatsoever, during the closed season, migratory birds, their nests, eggs, or increase, without first procuring a permit or license issued by the director under the provisions of this article, or without first procuring a permit issued by the authorized department of the United States government, authorizing the permittee to take or possess for any purpose whatsoever, any migratory birds, their nests, eggs, or increase during the closed season therein."

Boushehry was charged under each subsection with one count of illegal taking and one count of illegal possession of each goose. Thus, he was charged with two counts of taking a goose in violation of subsection (1), two counts of possessing a goose in violation of subsection (1), two counts of taking a goose in violation of subsection (2), and two counts of possessing a goose in violation of subsection (2), for a total of eight counts. Boushehry was ultimately convicted of one count of illegal taking and one count of illegal possession under each subsection, for a total of four counts. He was acquitted of the remaining four counts. Boushehry attacks these convictions on several grounds.

### A. Sufficiency of the Evidence

First, Boushehry claims there was insufficient evidence to support his two convictions under subsection (1). More specifically, Boushehry contends that the State failed to prove that he took or possessed the geese

outside the state of Indiana as required by subsection (1).

◼ Boushehry's claim requires that we construe subsection (1). When interpreting a statute, we strive to achieve the intent of the legislature. *Baker v. State* (1985), Ind. App., 483 N.E.2d 772, 774, *trans. denied.* We construe statutes to prevent absurdity or a result the legislature, as a reasonable body, could not have intended. *Heitman v. State* (1994), Ind.App., 627 N.E.2d 1307, 1309.

◼ Boushehry contends that the phrase "beyond the limits of the state of Indiana" modifies every verb preceding it. According to this construction, the statute would only make it unlawful to "take or possess" a migratory bird outside the state of Indiana. An act done entirely outside the boundaries of Indiana, without any result occurring in Indiana, is not punishable by Indiana. *Green v. State* (1953), 232 Ind. 596, 599-600, 115 N.E.2d 211, 214; IC 35-41-1-1 (1988 Ed.). A person who takes or possesses a migratory bird outside the boundaries of Indiana cannot be punished here because the taking or possession occurs entirely outside of our state. The legislature could not have intended to create an offense not punishable in Indiana.

The more logical construction of the statute is to have the phrase "beyond the limits of the state of Indiana" modify only the verbs "to ship, transport, or carry, or to deliver or receive for shipment, transportation, or carriage in any manner." These verbs all include conduct initiated within Indiana. The modifying phrase "beyond the limits of the state of Indiana" means that the birds are shipped, transported, or carried from Indiana to a place outside our boundaries. Because the prohibited conduct is initiated within our state, it is punishable here. IC 35-41-1-1.

Under this construction, the State was not required to prove that Boushehry took or possessed the geese outside the state of Indiana to gain a conviction under subsection (1). Boushehry's claim of insufficient evidence on this ground must fail.

## B. Adequacy of Charging Information

Next, Boushehry claims that all of his convictions under subsection (1) and subsection (2) should be reversed because the charging information inadequately advised him of the charges against him.

Article 1, Section 13 of the Indiana Constitution requires that a criminal defendant be advised of "the nature and cause of the accusation against him, and to have a copy thereof." An information must state "the name of the offense in the words of the statute or any other words conveying the same meaning," IC 35-34-1-2(a)(2) (1988 Ed.), and set forth "the nature and elements of the offense charged in plain and concise language without unnecessary repetition." IC 35-34-1-2(a)(4) (1988 Ed.).

◼ Boushehry first claims that subsection (1) of IC 14-2-4-1 is vague, thus rendering inadequate any charge made pursuant to that section. To survive a vagueness challenge, a statute must "clearly define its prohibitions so that individuals of ordinary intelligence would comprehend the statute to fairly inform them of the generally proscribed behavior and so that the statute does not encourage arbitrary or discriminatory enforcement." *Jackson v. State* (1994), Ind. App., 634 N.E.2d 532, 535 (citations omitted). We find that an individual of ordinary intelligence would comprehend IC 14-2-4-1(1) to fairly inform him that the illegal taking or possession of a migratory bird within the state of Indiana constitutes an offense under the statute. We reject Boushehry's claim that the statute itself renders the charging information inadequate.

Boushehry also claims that the information charging the offenses under IC 14-2-4-1(1) generally violates his constitutional guarantees under the fifth and fourteenth amendments to the United States Constitution. This claim appears to be based on Boushehry's interpretation of IC 14-2-4-2(1), which we reject for the reasons already discussed. To the extent this claim is based on some other ground, Boushehry has failed to articulate that ground and has failed to present cogent argument or citation to authority as required by Ind.Appellate Rule 8.3(A)(7), and thus, has waived the argument. *See Hare v. State* (1984), Ind., 467 N.E.2d 7, 17.

### Issue Three: Double Jeopardy

█ Boushehry also attacks his convictions under IC 14–2–4–1 on double jeopardy grounds. Boushehry was charged with four counts of illegal taking and four counts of illegal possession under each statutory subsection. Boushehry contends that the offenses for which he was acquitted are identical to the offenses for which he was convicted, and that as such, his acquittal on some counts operates as an implied acquittal of the others. Boushehry claims that his convictions for some counts, when he was acquitted for identical separately charged counts, is inconsistent and violates his rights against double jeopardy.

The court's judgments of conviction and acquittal are not inconsistent. Boushehry was charged with two violations of subsection (1), one count of illegal taking and one count of illegal possession for each goose, and two violations of subsection (2), one count of illegal taking and one count of illegal possession, for each goose. It is entirely consistent for the trial court to have found that Boushehry was guilty of illegally taking one goose and of illegally possessing the other.

Boushehry picked up the one goose that Waugh killed and carried it back to Boushehry's garage where Officer Bykowski later discovered it. These facts warrant a conviction for the illegal possession of this goose. The record also reflects that after Waugh shot and wounded the other goose, Boushehry chased it around the vacant lot before catching it, taking it back to his garage, and slitting its throat. These facts would warrant a conviction for the illegal taking of that goose.[2] We find that the offenses for which Boushehry was convicted were not identical to the offenses for which Boushehry was acquitted, and thus, find that the verdicts were consistent.

█ Boushehry argues that even if the verdicts are consistent, double jeopardy still prevents his conviction for all four offenses because they constitute the same offense. When presented with double jeopardy challenges of this nature, we are guided by the following principle:

> "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not."

*Bigler v. State* (1992), Ind.App., 602 N.E.2d 509, 520 (citing *Blockburger v. United States* (1932), 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306), *trans. denied.* Once an examination of the statutory provisions is made and no double jeopardy violation is found, an examination must be made of "the factual bases alleged by the State in the information or indictment and upon which the charges are predicated." *Fuller v. State* (1994), Ind.App., 639 N.E.2d 344, 348 (quoting *Wethington v. State* (1990), Ind., 560 N.E.2d 496, 507). An examination of the manner in which offenses are charged is made only where the lesser offense is not inherently included in the greater. *Tingle v. State* (1994), Ind., 632 N.E.2d 345, 350.

Boushehry claims that double jeopardy was violated when he was charged with eight separate offenses based upon the same incident. The State's charging of multiple offenses is authorized by IC 14–2–3–8(e) (1988 Ed.) which provides that "[t]he taking, catching, killing, possession, or transportation of each animal or part thereof ... in violation of this article constitutes a separate offense." Use of the disjunctive "or" at the end of the list of proscribed conduct means that any one act constitutes a separate offense. In addition, when more than one animal is involved, each proscribed act is a separate offense for each animal.[3] The manner in which the offenses were charged did not violate double jeopardy principles.

█ The State correctly concedes that double jeopardy prohibits Boushehry's convictions and sentences under both subsection (1) and subsection (2). Subsection (1) pro-

---

2. "Take" is statutorily defined as "to kill, shoot, spear, gig, catch, trap, harm, harass, or pursue any wild animal or to attempt to engage in any such conduct." IC 14–2–2–1.

3. The definition of "animal" includes birds. *See* IC 14–2–2–1 (1991 Supp.).

hibits the taking or possession of a migratory bird, "except only as otherwise permitted by the provisions of this article." [4] Subsection (2) prohibits the taking or possession of a migratory bird during the closed season without first procuring a permit or license.

Subsection (1) is distinguished from subsection (2) by a time element. Whether a violation of the Fish and Wildlife Act occurs in the closed or the open season determines whether such violation offends subsection (1) or subsection (2). When a person commits a violation of IC 14–2–4–1, it is necessarily done in either open or closed season, but not both. If the misconduct occurs in open season, it is a violation of subsection (1), but not subsection (2). If, however, the misconduct occurs in closed season, it is a violation of both subsection (1) and subsection (2); it is done both without permission under the Fish and Wildlife Act and in closed season. Similarly, when the misconduct involves taking or possessing a migratory bird in closed season without first procuring a license, it is a violation of both subsection (1) and subsection (2); the absence of a license constitutes the absence of permission under the Fish and Wildlife Act and is also a violation of the express prohibitions of subsection (2). In other words, when a person takes or possesses a migratory bird in closed season without first procuring a license, the State is not required to prove any fact under subsection (1) not also required to prove an offense under subsection (2). Thus, when the absence of a license in closed season is involved, the offenses in subsection (1) are necessarily included in subsection (2). For this reason, Boushehry's convictions and sentences under subsection (1) and subsection (2) merge, and his convictions and sentences under subsection (1) must be vacated.

Boushehry next contends that double jeopardy prohibits his convictions for both illegal taking and illegal possession because the terms "take" and "possess" are separated by the connector "or." Because we have vacated Boushehry's convictions under subsection

(1), we need not address his contention as to those offenses. With respect to his remaining convictions under subsection (2), we have already determined that Boushehry may properly be convicted of the taking or possession of each goose. *See* IC 14–2–3–8(e).

Boushehry finally challenges his two cruelty to an animal convictions, claiming that because they were part of a continuous episode, they should constitute but one offense. Because we vacated one of Boushehry's cruelty to an animal convictions in Issue Two, *supra*, Boushehry's argument is moot.

### CONCLUSION

We dispose of Boushehry's convictions and sentences as follows:

1. Boushehry's conviction and sentence for criminal recklessness is reversed and ordered vacated.

2. One of Boushehry's convictions and sentence for cruelty to an animal is reversed and ordered vacated. The other conviction and sentence for cruelty to an animal is affirmed.

3. Boushehry's convictions and sentences for violating IC 14–2–4–1(1) are reversed and ordered vacated.

4. Boushehry's convictions and sentences for violating IC 14–2–4–1(2) are affirmed.

SULLIVAN, J., concurs.

HOFFMAN, J., concurs in part and dissents in part with separate opinion.

HOFFMAN, Judge, concurring in part, dissenting in part.

I concur except to that part of the majority opinion which affirmed the conviction for the violation of I.C. 35–46–3–12.[5] The uncontroverted testimony of Chestena Rogers, Craig Rogers and Fred Boushehry clearly sets out that the goose was seriously injured and would endure prolonged suffering unless killed. Boushehry used an accepted method

---

4. The article is also known as the Fish and Wildlife Act. *See* IC 14–2–1–1 (1988 Ed.).

5. This cause demonstrates the practice of "overcharging". The charging of eleven criminal offenses for the taking of two Canada geese is beyond the comprehension of any fair minded person. This practice should be condemned.

of killing fowl by cutting off its head. Neither Officer Bykowski nor Jim Waugh testified as to the condition of the goose. I would reverse the remaining conviction for cruelty to an animal.