**Curtis Leon SMITH, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A02–9701–CR–14.

Court of Appeals of Indiana.

Dec. 11, 1997.

---

Timothy J. Burns, Indianapolis, for Appellant–Defendant.

Jeffrey A. Modisett, Attorney General, Randi F. Elfenbaum, Deputy Attorney General, Indianapolis, for Appellee–Plaintiff.

## OPINION

GARRARD, Judge.

### STATEMENT OF THE CASE

Curtis Leon Smith ("Smith") appeals his conviction for Criminal Recklessness, as a Class D felony, following a jury trial. The sole issue presented for our review is whether there was sufficient evidence to support his conviction. We affirm.

### FACTS

On March 18, 1996, at approximately 7:30 p.m., Smith repeatedly test fired his Tech 9 millimeter pistol at an old car parked in his backyard. Indianapolis Police Officer Scott Baldwin arrived at the scene in response to a radio dispatch indicating that shots had been fired in that neighborhood. Upon investigation, Officer Baldwin observed that approximately ten residential homes were located within a fifty-yard radius of the old car. Officer Baldwin became particularly concerned when he noticed that one home that was in Smith's direct line of fire had both a light and a television on inside. Despite his attempts, Officer Baldwin could not get anyone inside that house to come to the door. Also during his investigation, Officer Baldwin observed a large mass of people walking on the street near Smith's home. They were leaving a festival which had taken place at a park nearby. The people in the street were clearly in gunfire range of Smith's test firing activity.

### DISCUSSION AND DECISION

When reviewing the sufficiency of the evidence, we neither reweigh the evidence nor determine the credibility of witnesses. *Smith v. State,* 678 N.E.2d 1152, 1155 (Ind.Ct.App.1997), *trans. denied.* In-

stead, we look to the evidence most favorable to the verdict together with all reasonable inferences to be drawn therefrom. *Id.* If there exists substantial evidence of probative value to establish every material element of the offense beyond a reasonable doubt, we will not disturb the verdict. *Griepenstroh v. State,* 629 N.E.2d 887, 889 (Ind.Ct.App.1994), *trans. denied.*

To prove the offense of criminal recklessness, the State was required to prove that Smith recklessly, knowingly, or intentionally performed an act that created a substantial risk of bodily injury to another person. IND. CODE § 35–42–2–2(b). Such offense is a Class D felony if it is committed while armed with a deadly weapon. *Id.*

■ Smith contends that the State presented insufficient evidence that his conduct created a "substantial risk of bodily injury." "Substantial" risk is risk that has "substance or actual existence." *Boushehry v. State,* 648 N.E.2d 1174, 1177 (Ind.Ct.App.1995) (citing *Elliott v. State,* 560 N.E.2d 1266, 1267 (Ind. Ct.App.1990)). Smith points to our opinions in *Boushehry* and *Elliott* in support of his argument that the State relied on mere speculation that his actions posed a substantial risk of bodily injury to another person. However, both cases relied upon by Smith are distinguishable from the instant case.

In *Elliott,* the defendant fired five pistol shots from his place of business over uninhabited fields and woodlands which bordered his business. *Elliott,* 560 N.E.2d at 1267. Some of Elliott's employees were present at the time; however, none of the employees were in his line of fire. *Id.* Moreover, although hunters were known to hunt in the adjacent fields and woodlands, no evidence was presented that anyone was present in the woodlands or fields. *Id.* Accordingly, we reversed Elliot's criminal recklessness conviction concluding that his conduct did not create a substantial risk of bodily injury to another person "because there were no people in or near his line of fire." *Id.*

Similarly, in *Boushehry,* the defendant went to a vacant lot and fired two or three shots from his .22 caliber rifle at some geese. *Boushehry,* 648 N.E.2d at 1176. The defendant's shots were fired in the direction of Shelbyville Road, which bordered the vacant lot. *Id.* As with the "non-existent hunters in *Elliott,*" we concluded that the possibility of a motorist passing by on Shelbyville Road at the time the defendant fired his gun across presented "only a remote risk of bodily injury." *Id.* at 1177. Because the record contained no evidence that anyone was in or near the defendant's line of fire, we held that the State failed to prove the actual existence of substantial risk of bodily injury to another person. *Id.*

Unlike in *Boushehry* and *Elliott,* the evidence and reasonable inferences to be drawn therefrom indicate that there were individuals in or near Smith's line of fire. Here, the State presented evidence that Smith test fired his gun at least six times in his backyard by shooting at an old car. Officer Baldwin testified that there were approximately ten residential homes located within fifty yards of the car, and that one of the homes was in the direct line of Smith's gun fire. Although nobody answered the door of that home upon Officer Baldwin's investigation, Officer Baldwin stated that he noticed both a light and a television on in the home, creating a reasonable inference that a person was in the home at the time of the Smith's activity. Moreover, the record shows that a large mass of people inhabited the street near Smith's backyard at the time of his test firing because a festival had just ended at a park nearby. Indeed, Officer Baldwin testified that Smith's test firing activity occurred within a "stone's throw" of these people.

Based upon this evidence, the jury could reasonably infer that Smith's conduct created an actual and substantial risk of bodily injury to another person. There was sufficient evidence to support his conviction for criminal recklessness.

Affirmed.

ROBERTSON, J., concurs.

STATON, J., dissents and files separate opinion.

STATON, Judge, dissenting.

I dissent for two reasons.

First, there is insufficient evidence that Curtis Smith created a "substantial risk of bodily injury to another person."

Secondly, the rationale employed by the Majority is misplaced when *Boushehry v. State*, 648 N.E.2d 1174 (Ind.Ct.App.1995) and *Elliott v. State*, 560 N.E.2d 1266 (Ind.Ct.App. 1990) are cited in support of their rationale. Both of these cases should be disapproved by the Indiana Supreme Court because they misinterpret the intent of the legislature. The intent of IND.CODE § 35–42–2–2(b) is to prohibit conduct which creates a "substantial risk of bodily injury" to another person. The emphasis should be placed upon the "substantial risk" of bodily injury and not the remote possibility of bodily injury. "Risk" does not require absolute proof that a person is in the "line of fire;" is present in a house; is hunting in a woodland; or is driving down a road at a particular time. It is the *substantial risk* created under conditions where persons are known to be present or expected to be present.

Curtis Smith was firing a Tech 9 millimeter pistol into an old parked car in his backyard. Ten residential homes were fifty yards or more away. There is vague testimony about one of the residents being in Smith's "line of fire", but without more, this testimony is meaningless unless supplemented by some evidence which would indicate that Smith raised or pointed his pistol high enough to hit the residence, fifty yards away, instead of the old car in his backyard or the ground in his yard. There is absolutely no evidence that any person was at risk, nor do the conditions described constitute a "substantial risk" of bodily injury to anyone. The evidence is insufficient to sustain the verdict. A complaint to the police from a neighbor is another matter not covered by this Statute.

*Boushehry* and *Elliott* have as their foundation a definition of "substantial risk." They conclude that the risk has to be one of "substance or actual existence." In other words, someone has to be present to receive the bodily injury. The risk that the Statute is trying to avoid relates to physical conditions that a person could reasonably expect would cause bodily injury. For example in *Boushehry* firing a rifle across Shelbyville Road was not a violation because Boushery didn't see a person in a car coming down the road. In *Elliott*, five pistol shots were fired into a woodland area next to Elliott's business. Hunters were known to hunt in the woodland area. Because Elliott did not see a hunter in the woodland, his conviction was reversed.

According to *Boushehry* and *Elliott*, a live person has to be in the "line of fire" or in the cross-hairs of your sights or nearly so. Otherwise, there is no violation of the Statute. In *Boushehry*, the Court referred to the *Elliott* reversal:

> In deciding Elliott, this court determined that the word 'substantial' as used in the criminal recklessness statute, means something that has 'substance or actual existence.' *Id.* (quoting Webster's Third New International Dictionary 2280 (1996)). Based upon this definition, this court rejected as 'mere conjecture' the State's contention that a hunter 'could have been in the woodlands, out of Elliott's sight.' *Id.* 'A substantial risk of bodily injury may not be proven by mere speculation for which there has been no evidence presented at trial.' *Boushehry*, at p. 1177

*Boushehry* and *Elliott* have substituted Webster's Dictionary definition of "substantial" for the statutory intent of the Indiana Legislature. The statutory intent is to prohibit conduct which could reasonably cause bodily injury. It is not necessary to prove that a person was actually present. If this were the intent of the Statute, it would invite reckless conduct where the actual presence of persons could not be proven. It is quite likely that a person witnessing someone shooting in his direction would seek to distance himself from the shooter. Too, the State should not have to produce someone who has been injured bodily to show that the

conduct was reckless. Each case must be decided individually on the reasonableness of the conduct and the risk exhibited—not upon Webster's Dictionary.

Smith was in his own yard shooting at an old car known to be unoccupied. The nearest house was fifty yards away. The proximity of people who were coming from a park is not known. There is absolutely no evidence that Smith pointed his 9 millimeter pistol at any object or person within "range" of his pistol. The noise created by firing the pistol was disturbing to neighbors and may have caused some apprehension to some neighbors. But, this is only bad judgment on Smith's part. It does not mean that he violated the Statute by his conduct. The Statute does not cover bad judgment—only reckless conduct which may cause bodily injury.

I dissent.