In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 06-2431

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

ARTEMAS BOYD,

*Defendant-Appellant*.

———————

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 1:05CR00209-001—**Sarah Evans Barker**, *Judge*.

———————

ARGUED NOVEMBER 14, 2006—DECIDED JANUARY 30, 2007

———————

Before EASTERBROOK, *Chief Judge*, and POSNER and COFFEY, *Circuit Judges*.

POSNER, *Circuit Judge*.   The defendant pleaded guilty to being a felon in possession of a gun and was sentenced to 46 months in prison. The sentence was influenced by the district judge's determination that the defendant had used the gun to commit another felony. A person who, "while armed with a deadly weapon," "recklessly . . . performs . . . an act that creates a substantial risk of bodily injury to another person" ("recklessly" being defined as committing the act "in plain, conscious, and unjustifiable disregard of harm that might result

the disregard involves a substantial deviation from acceptable standards of conduct") is guilty of a felony under Indiana law. Ind. Code §§ 35-41-2-2(c), 35-42-2-2(b), (c).

Except for being limited to cases in which the defendant is armed and the risk created by his conduct is that of physical injury, the Indiana statute tracks the normal understanding of criminal recklessness: "consciously disregard[ing] a substantial and unjustifiable risk that a material element exists or will result from his conduct." American Law Institute, Model Penal Code § 2.02(2)(c) (1962). There is no doubt that the defendant was armed with a deadly weapon and had the mental element required by the statute—conscious disregard of the risk. See *Farmer v. Brennan*, 511 U.S. 825, 836-37 (1994); *United States v. Ladish Malting Co.*, 135 F.3d 484, 488 (7th Cir. 1998); *United States v. Gonsalves*, 435 F.3d 64, 70 (1st Cir. 2006). The only question is whether his conduct created a substantial risk of bodily injury. The judge's finding that it did is entitled to deference, *United States v. Markovitch*, 442 F.3d 1029, 1031 (7th Cir. 2006); *United States v. Wyatt*, 102 F.3d 241, 246 (7th Cir. 1996), as in other cases in which a trial judge is asked to apply a legal standard (here that of substantial risk) to basic facts, by which we mean facts uninfluenced by legal concepts, such as the fact that the defendant fired the gun. Whether the judge got the standard right—that is, correctly understood the meaning of "substantial risk of bodily injury" in Indiana law—is a separate question from whether she applied the correct standard correctly. Review of the answer to the first question is plenary and to the second deferential.

At 3:00 a.m. one morning, the defendant and his girlfriend left the Guvernment Bar and Lounge, a nightclub in downtown Indianapolis. The club was on the verge of

closing for the night and other patrons were leaving, though we do not know how many. The front entrance to the club is on Market Street, and the couple left by that entrance and walked to an "alley" behind the club, though the satellite photograph appended to this opinion suggests that it is actually a parking lot. While there, the defendant fired six shots from a gun described in the record only as an FN Herstal pistol that holds 20 rounds of ammunition that can "penetrate up to 14 levels of body armor." The shell casings were found in the parking lot. No one was injured. The club is only a couple of blocks from Monument Circle, the Times Square of Indianapolis (but a very tame and quiet Times Square), and is situated among buildings. There is no indication of the bullets' trajectory or where they landed, though it seems undisputed that the defendant fired the shots into the air. The club has a rear entrance, but there is conflicting evidence on whether anyone was using it when or just before the defendant was shooting, and the judge made no finding.

The defendant argues that given the hour and the fact that there were no people in the direct line of fire (though his girlfriend, at least, was nearby, and there may have been other people in the parking lot as well), his shooting the pistol did not create a "substantial" risk of causing bodily injury. The FN Herstal (presumably the reference is to the FN Herstal Five-seveN Pistol, the only pistol Herstal makes that holds 20 rounds) "fires the SS190 5.7x28mm ball round. This projectile will perforate any individual protection on today's battlefield including the PASGT kevlar helmet, 48 layers of kevlar body armor and the CRISAT target (titanium and kevlar)." "The Arms Site," www. remtek.com/arms/fn/57/index.htm, visited Jan.18, 2007. Firing multiple shots from a powerful gun (as the FN

Herstal is conceded to be, though the details in the rec-
ord are sparser than those available on the Web) in the
downtown of a large city at a time when pedestrians (the
other patrons who were leaving the nightclub) are
known to be in the vicinity creates a risk of harm that,
while not large in probabilistic terms, is "substantial"
relative to the gratuitousness of the defendant's actions.
See, e.g., *Woods v. State*, 768 N.E.2d 1024, 1028 (Ind. App.
2002) (defendant fired shots in residential area and there
were persons near the line of fire); *Smith v. State*, 688
N.E.2d 1289, 1291 (Ind. App. 1997) (defendant shot at old
car parked in his backyard near a crowd that was attend-
ing a festival and there were homes in the vicinity);
*United States v. Cole*, 298 F.3d 659, 662 (7th Cir. 2002)
("discharging a firearm is an inherently risky act"); *United
States v. Rutherford*, 54 F.3d 370, 376 (7th Cir. 1995) (drunk
driving deemed reckless act because of the risk of physical
injury that it creates); *Orban v. Vaughn*, 123 F.3d 727, 733
(3d Cir. 1997) ("courts frequently have found that motor
vehicle drivers exhibited the required level of reckless-
ness while driving to justify a conviction for recklessly
endangering another person"); *McNabb v. State*, 887 So. 2d
929, 975 (Ala. Crim. App. 2001) ("the offense of reckless
endangerment embraces such conduct as . . . 'reckless
driving[,] . . . dangerous conduct with firearms[,]. . .throw-
ing objects at common carriers, dropping objects from
toll bridges, placing equipment within six feet of a high
voltage wire, shooting at an unoccupied building, shoot-
ing at an aircraft, placing an obstruction on railway
tracks, tampering with a railroad safety appliance, and
throwing substances likely to injure persons on public
highways' "), quoting the American Law Institute's Model
Penal Code, *supra*, § 211.12.

The point about the *relativity* of the concept of reckless-ness deserves emphasis. An activity is not reckless just because it is dangerous. Hunting quail is dangerous even if it is done carefully. An activity is reckless when the potential harm that it creates (the harm to reputation caused by defamation, for example, where reckless disre-gard called "malice" plays a critical role when the plaintiff is a public figure), is wildly disproportionate to any benefits that the activity might be expected to confer. Cf. *West by & through Norris v. Waymire*, 114 F.3d 646, 651 (7th Cir. 1997). The emotional gratification that defendant Boyd derived from shooting into the night, though per-haps great, is not the kind of benefit that has weight in the scales when on the other side is danger to life and limb, even if the danger is limited, as it was here. It was not, however, trivial. Dangerousness is a function of the magnitude of the harm that will occur if the danger materializes and of the probability that it will materialize. Although the probability that a shot fired in the air will hit someone is small, it was increased sixfold by the number of shots fired. Moreover, the angle of the shoot-ing may not have been steep enough to assure that all the shots would clear all the buildings within range, and a high-velocity armor-piercing bullet would be more likely to kill or seriously injure someone standing at a window than a .22; it might even penetrate a wall.

The defendant's best case is *Elliott v. State*, 560 N.E.2d 1266 (Ind. App. 1990). The defendant fired five shots in the direction of apparently empty fields and woodland. The court held that his conduct had not created a sub-stantial risk of bodily harm: "Since the evidence failed to show any person put in harm's way by Elliott's con-duct, there was no substance to the risk created by the

firing of the pistol; the risk had no actual existence. Instead, the presence of Elliott's employees behind him and the possibility of a concealed hunter in the woodlands presented only a remote risk of bodily injury." *Id*. at 1287. (*Boushehry v. State*, 648 N.E.2d 1174, 1177 (Ind. App. 1995), was a similar case.) Read literally, the first sentence in the passage that we quoted from *Elliott* would exonerate our defendant, as there is no evidence that any person was put in harm's way by his shooting. But the meat of the passage is in the second sentence; the possibility of a "concealed hunter" was remote. In contrast, considering the power and range of the Herstal, the proximity of buildings in some of which there may have been security guards or cleaning staffs even at 3 a.m.—some of the buildings may even have been apartment houses—and considering too that patrons of the Guvernment Bar and Lounge who were leaving the club were close to, perhaps even in, the parking lot where the shooting took place, we do not think the judge committed a clear error or misinterpreted Indiana law in ruling that the defendant's reckless action created a substantial risk of bodily harm.

We are, however, distressed at the sloppiness with which the case has been handled by both sides. Neither party attempted to quantify the risk created by the defendant's conduct; and vague words such as "substantial" are not a satisfactory substitute for data, as we remarked in *United States v. Chambers*, No. 06-2405, 2007 WL 60874 (7th Cir. Jan. 9, 2007). Our *Rutherford* opinion, quoted earlier, examined statistics concerning the risks created by drunk driving, and there are published statistics on accidents from random shooting. See, e.g., Lawrence W. Sherman et al., "Stray Bullets and 'Mushrooms': Random Shootings

of Bystanders in Four Cities, 1977-1988," 5 *J. Quantitative Criminology* 297 (1989).

Less forgivably—for the enormous variety of the circumstances in which random shooting occurs may defeat efforts to estimate the probability that a given incident would result in injury—no satellite photo (available free of charge from Google) was placed in evidence to indicate the physical surroundings. Nor does the record specify the model FN Herstal that the defendant was using or the type of ammunition the gun contained. The judge made no finding concerning the number of persons on the streets near the shooting (another conflict in the evidence that she did not try to resolve) or whether any persons were in the alley when and where the shooting took place. There was also no evidence on whether there are apartment buildings as well as office buildings in the vicinity of the shooting.

Despite these gaps, we are reasonably confident that the Indiana courts would hold that firing multiple shots from a high-powered gun in downtown Indianapolis for no better reason than an excess of animal spirits creates a substantial risk of bodily injury within the meaning of the Indiana statute.

AFFIRMED.

SATELLITE PHOTOGRAPH OF THE SCENE OF THE CRIME



A true Copy:

Teste:

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*