## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 27 2018, 10:00 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kimberly A. Jackson
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Caryn N. Szyper
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| John A. Johnson,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | June 27, 2018<br><br>Court of Appeals Case No.<br>52A02-1711-CR-2617<br><br>Appeal from the Miami Circuit Court<br><br>The Honorable Timothy P. Spahr, Judge<br><br>Trial Court Cause No.<br>52C01-1005-FB-16 |

**Mathias, Judge.**

[1] John A. Johnson ("Johnson") was convicted after a jury trial in Miami Circuit Court of Class B felony aggravated battery, Class D felony criminal

recklessness, and of being a habitual offender. Johnson appeals his convictions and raises three issues which we restate as:

I. Whether the trial court erred when it failed to *sua sponte* instruct the jury on self-defense;

II. Whether there was sufficient evidence to support Johnson's criminal recklessness conviction; and

III. Whether Johnson's convictions for aggravated battery and criminal recklessness violated Indiana's prohibition against double jeopardy.

We affirm.

## Facts and Procedural History

On April 28, 2010, David and Susan Stair were at their home in Peru, Indiana, with their daughter Paula Portwood ("Portwood") and her boyfriend Melvin Jones ("Melvin"). The two couples were drinking and celebrating the Stairs' anniversary and David Stair's birthday. Around 2:30 a.m. on April 29, Portwood and Melvin began arguing in the Stairs's yard. During the argument, Portwood picked up a wooden baseball bat and smashed the windows and headlights out of the vehicle she owned with Melvin. Portwood also dented the hood of the vehicle with the bat.

Johnson lived across the street from the Stairs in his mother's home. Johnson heard the argument from inside the home, and he stepped outside onto the front porch to confront Melvin and Portwood. Johnson was specifically angry about the loud noise because his mother had a doctor's appointment that morning in

Indianapolis. Johnson stepped out onto the porch a couple of times, and on one occasion, Johnson told Melvin, "you don't shut the f*** up and leave me the f*** alone on my property and I'm going inside and I'm going to grab something up and I'm going to hurt you with it." Ex. Vol., State's Ex. 47.

[4] Johnson then went inside, grabbed a .22 caliber rifle, returned to the porch, and told Melvin and Portwood to "[s]hut the F up or I'm going to shoot you[.]" Tr. Vol. 2, p. 138. Portwood responded, "Yeah, right," at which point Johnson fired his weapon. *Id.* at 139. Portwood explained that she "heard the first fire and I felt something pass my face, and Melvin had pushed me out of the way and he took the second bullet, and then pretty sure I heard a third fire." *Id.*[1] Melvin was hit in the left arm, and he immediately fell to the ground.

[5] Peru City Police Department Officer Jon Richardson ("Officer Richardson") arrived soon after the shooting, and he spoke with Melvin and Portwood. Melvin indicated to Officer Richardson that the shot came from the direction of Johnson's mother's residence. An ambulance arrived, and Melvin was first taken to a local hospital but had to be transported by helicopter to a hospital in Fort Wayne because of the severity of the injury. Meanwhile, Officer Richardson approached Johnson's mother's home where he spoke with

---

[1] We acknowledge that Johnson stated in his confession to Peru Police Department Officer Rod Richard ("Officer Richard") that he only fired one shot, *see* Ex. Vol., State's Ex. 47–48. However, Portwood testified she heard three shots, Melvin testified he heard more than one shot, and Susan Stair testified she heard at least two shots. Tr. Vol. 2, pp. 126–27, 139, 179. And on appeal, we view the facts most favorable to the jury's verdict.

Johnson's mother and determined that Johnson was not there. Officers proceeded to drive around the surrounding area to look for Johnson, but they did not find him that night.

[6] Around 9:00 a.m. later that morning, Officer Rod Richard ("Officer Richard") obtained a warrant to search Johnson's mother's residence. When officers executed the warrant, they immediately found a spent .22 caliber shell casing on the porch next to a cigarette butt. At the conclusion of the search, officers had discovered eighteen live .22 caliber cartridges, eight spent .22 caliber cartridges, and four lead projectiles inside the home. While Officer Richard was executing the search warrant, he came in contact with Johnson, read him his Miranda rights, and asked him questions about the shooting the night before.

[7] Johnson initially told Officer Richard that he was walking with a friend until 5:00 a.m. that morning. Officer Richard attempted to verify Johnson's story, but determined that it did not check out. Officer Richard then had Johnson transported to the Peru Police Department where he conducted a tape-recorded interview. During the interview, Johnson eventually admitted to shooting Melvin and explained, "Yeah I shot the mother f[*****] because he a retarded stupid mother f[*****] from out of town that didn't belong here. And if I had a chance, I'd try my damnedest to hit him in the f[******] head next time if it came down to it." Ex. Vol. State's Ex. 48.

[8] On May 5, 2010, the State charged Johnson with Class B felony aggravated battery, Class B felony unlawful possession of a firearm by a serious violent

felon, Class C felony criminal recklessness resulting in serious bodily injury, and Class D felony criminal recklessness. The State added a habitual offender allegation five days later. Johnson entered into a plea agreement that called for a sentence of twenty-five years executed in the Indiana Department of Correction ("DOC"). However, Johnson later filed a petition for post-conviction relief indicating that he wanted to have the plea agreement set aside. And because of a defect in the change of plea hearing, the trial court granted Johnson's petition on January 15, 2017, and it set aside the original plea agreement.

[9] Thereafter, the State decided to prosecute Johnson on all of the original charges. A three-day jury trial commenced on July 24, 2017, after which the jury found Johnson guilty of Class B felony aggravated battery, Class D felony criminal recklessness, and of being a habitual offender.[2] On August 31, the trial court sentenced Moore to an aggregate term of thirty-eight years executed in the DOC,[3] and it ordered Johnson to pay $61,701.92 in restitution to Melvin.

[10] Johnson now appeals.

---

[2] The State dismissed the count for Class C felony criminal recklessness resulting in serious bodily injury prior to trial, and it dismissed the count for Class B felony unlawful possession of a firearm by a serious violent felon after the jury's initial verdict. Tr. Vol. 2, p. 51; Tr. Vol. 3, pp. 96–97.

[3] Because Johnson had been imprisoned since April 29, 2010, he received credit for 5,362 days.

# I. Jury Instruction on Self-Defense

[11] Johnson first argues that the trial court had a duty to instruct the jury *sua sponte* on the issue of self-defense and that its failure to do so constituted fundamental error. A trial court has broad discretion in how it instructs a jury, and we review its discretion only for abuse. *McCowan v. State*, 27 N.E.3d 760, 763 (Ind. 2015). Here, Johnson did not tender a self-defense instruction, nor did he object to any of the instructions given by the trial court. Our trial rules require that a party specifically object to any deficiency in jury instructions in order to preserve that issue for appeal. Ind. Crim. Rule 8(b); Ind. Trial Rule 51(C). Therefore, Johnson has waived the issue on appeal.

[12] In an effort to circumvent waiver, Johnson contends that "[t]he evidence of self[-]defense was so substantial" that the trial court committed fundamental error by failing to *sua sponte* instruct the jury on self-defense. Appellant's Br. at 22. We have consistently explained that "[f]undamental error is an extremely narrow exception to the waiver rule, and the defendant faces the heavy burden of showing that the alleged error is so prejudicial to the defendant's rights as to make a fair trial impossible." *Grimes v. State*, 84 N.E.3d 635, 640 (Ind. Ct. App. 2017), *trans. denied*.

[13] Here, the only evidence supporting Johnson's claim of self-defense comes from his police interview on the morning of the shooting. In that interview, Johnson claimed that he shot at Melvin because Melvin was repeatedly punching Portwood in the face. He indicated that he could see blood fly from her face as Melvin hit her and that her face was "all black and blue." Ex. Vol., State's Ex.

48. However, both Melvin and Portwood testified at trial that they did not have a physical altercation on the night of the shooting. Trial Tr. Vol. 2, pp. 138, 154, 194. Officer Richard testified that the area underneath Portwood's left eye was slightly red and puffy, *Id.* at 230, but this does not conform with Johnson's allegation that Melvin punched her in the face multiple times.

[14] Moreover, even if we fully credit Johnson's account of the shooting, he told Officer Richard that he fired his weapon as Portwood walked away from Melvin and towards her parents' house. Our supreme court has explained that "[a] person claiming self-defense cannot reasonably base a belief that the threat is imminent on the actions of another who has withdrawn from the confrontation." *Henson v. State*, 786 N.E.2d 274, 278 (Ind. 2003). By Johnson's own admission, Portwood was not in imminent danger at the time he shot Melvin, and therefore, Johnson was not entitled to an instruction on self-defense.

[15] For these reasons, there was no error in this case—much less fundamental error—when the trial court failed to *sua sponte* instruct the jury on self-defense. *See Harris v. State*, 268 Ind. 594, 377 N.E.2d 632, 634 (1978) (concluding that the trial court did not commit fundamental error when it failed to *sua sponte* instruct the jury on self-defense, even though there was some evidence that might support a self-defense claim).

## II. Sufficiency of the Evidence

[16] Johnson next contends that the evidence is insufficient to sustain his conviction for Class D felony criminal recklessness. When reviewing a claim of insufficient evidence to sustain a conviction, we consider only the probative evidence and reasonable inferences supporting the verdict. *Jackson v. State*, 50 N.E.3d 767, 770 (Ind. 2016). It is the fact-finder's role, not ours, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. *Id.* We will affirm the conviction unless no reasonable fact-finder could have found the elements of the crime proven beyond a reasonable doubt. *Id.* It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence; rather, the evidence is sufficient if an inference may reasonably be drawn from it to support the verdict. *Drane v. State*, 867 N.E.2d 144, 147 (Ind. 2007).

[17] At the time of Johnson's offense, Indiana Code sections 35-42-2-2(b)(1) & (c)(2)(A) provided that "[a] person who recklessly . . . performs [] an act that creates a substantial risk of bodily injury to another person" commits Class D felony criminal recklessness if the act "is committed while armed with a deadly weapon." Indiana Code section 35-41-2-2(c) explains that "[a] person engages in conduct 'recklessly' if he engages in the conduct in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct." Here, Johnson alleges that "[t]he record [] contains no evidence that he shot with plain, conscious, and unjustifiable disregard of harm that might result to Portwood"

because "[w]hen Johnson fired, he was aiming at Melvin in an attempt to save Portwood, not to subject her to any harm."[4] Appellant's Br. at 25–26. We disagree.

[18] The record before us indicates that Johnson fired a .22 caliber rifle in the direction of both Melvin and Portwood from his mother's porch. Susan Stair heard at least two shots fired, Portwood felt something pass by her face before Melvin was hit in his left shoulder, and Melvin heard shots fired in their direction before he fell to the ground. Our courts have consistently found sufficient evidence to uphold a conviction for criminal recklessness for actions far less egregious than Johnson's actions here. *See, e.g., Al-Saud v. State*, 658 N.E.2d 907, 910 (Ind. 1995) (defendant brandished an unloaded weapon and pointed it at an individual); *Tipton v. State*, 981 N.E.2d 103, 106 (Ind. Ct. App. 2012) (defendant fired a weapon into an uninhabited home), *trans. denied*; *Smith v. State*, 688 N.E.2d 1289, 1291 (Ind. Ct. App. 1997) (defendant fired a weapon in his backyard at an old car). For these reasons, we find the jury could reasonably conclude that by firing a .22. caliber rifle at Melvin and Portwood, Johnson performed an act that created a substantial risk of bodily injury to Portwood. Accordingly, the evidence was sufficient to support Johnson's criminal recklessness conviction.

---

[4] The charging information for Johnson's Class D felony criminal recklessness count states in part that "Johnson did recklessly and/or knowingly and/or intentionally with a deadly weapon, to wit: .22 caliber gun, perform an act, to-wit: shooting a gun that created a substantial risk of bodily injury to Paula K. Portwood[.]" Appellant's App. Vol. 3, p. 10.

## III. Double Jeopardy Concerns

[19] Finally, Johnson alleges that his convictions for aggravated battery and criminal recklessness violate Indiana's prohibition against double jeopardy under the actual-evidence test. He maintains that these convictions were based upon the same conduct of drawing his rifle and firing it.

[20] Article 1, Section 14 of the Indiana Constitution provides, "No person shall be put in jeopardy twice for the same offense." We review double jeopardy claims *de novo* on appeal. *Sloan v. State*, 947 N.E.2d 917, 920 (Ind. 2011). And we analyze alleged violations of Indiana's Double Jeopardy Clause pursuant to our supreme court's opinion in *Richardson v. State*, 717 N.E.2d 32 (Ind. 1999). In *Richardson*, our supreme court held that:

> [T]wo or more offenses are the "same offense" in violation of Article I, Section 14 of the Indiana Constitution, if, with respect to *either* the statutory elements of the challenged crimes *or* the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense.

717 N.E.2d at 49 (emphasis in original).

[21] Under the "actual evidence" test, Johnson must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish *all* of the essential elements of a second challenged offense. *Id.* at 53. And this court has explained:

> Application of this test requires the court to identify the essential elements of each of the challenged crimes and to evaluate the evidence from the jury's perspective[.] Therefore, we consider the essential elements of the offenses, the charging information, the jury instructions, the evidence, and the arguments of counsel. The term reasonable possibility turns on a practical assessment of whether the jury may have latched on to exactly the same facts for both convictions.

*Bunch v. State*, 937 N.E.2d 839, 845–46 (Ind. Ct. App. 2010), *trans. denied* (citations and quotations omitted).

[22] Johnson argues that his convictions violate double jeopardy because they "were based on Johnson's firing of the rifle: specifically, his firing of one shot, as the record does not support a finding of multiple shots and the State did not suggest during its closing arguments that multiple shots were fired." Appellant's Br. at 29. We disagree.

[23] We first note that Johnson's aggravated battery conviction was based on his shooting Melvin in the left arm, and the criminal recklessness conviction was based on his shooting in the direction of Portwood. *See* Appellant's App. Vol. 3, pp. 7, 10. The jury heard Johnson's police interview in which he told Officer Richard that he only fired one shot. However, the jury also heard Susan Stair testify that she heard two or three shots, Portwood testify that she heard two or three shots, and Melvin testify that he heard "shots." Tr. Vol. 2, pp. 126–27, 139, 179. And although officers only recovered one spent shell casing from the front porch, they also recovered several spent shell casings and live ammunition from Johnson's mother's home.

[24]     The facts supporting the aggravated battery conviction demonstrate that Johnson shot Melvin in the left arm. And Johnson's conviction for criminal recklessness is supported by evidence that Johnson fired his rifle more than once and in the direction of Portwood.[5] For these reasons, we cannot say that the jury used a single gunshot to support both of Johnson's convictions, and therefore, his convictions for aggravated battery and criminal recklessness do not violate double jeopardy.

## Conclusion

[25]     Based on the facts and circumstances before us, the trial court did not err when it failed to *sua sponte* instruct the jury on self-defense, there was sufficient evidence to support Johnson's conviction for criminal recklessness, and Johnson's convictions do not violate Indiana's prohibition against double jeopardy. Accordingly, we affirm.

Riley, J., and May, J., concur.

---

[5] Even if Johnson only fired one shot, there would be still be no double jeopardy violation here because there were two separate victims. Johnson's act inflicted a significant injury on Melvin, and it also created a substantial risk of bodily injury to Portwood. *See Rawson v. State*, 865 N.E.2d 1049, 1055–56 (Ind. Ct. App. 2007) (holding that convictions for aggravated battery and criminal recklessness did not violate double jeopardy where defendant shot at an individual and in the direction of his home), *trans. denied; Whaley v. State*, 843 N.E.2d 1, 15 (Ind. Ct. App. 2006) (holding that two convictions for resisting law enforcement did not violate double jeopardy even though defendant's actions involved a single incident of resisting because defendant injured two people as a result of his resistance), *trans. denied.*